IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO.: _____

| | |
|---|---|
| JONATHAN MAYBERRY, as Personal Representative of the Estate of CHRISTOPHER LEE MAYBERRY, <br><br> Plaintiff, <br><br> v. <br><br> SHERIFF CALVIN WOODARD, JR., CAPTAIN MARC CONNOR, OFFICER DARIUS ELLIS, Officer JOHN DAVID BISSETTE, JR., CORPORAL TERRY TERRELL BLANCHARD, OFFICER JOSE A. MARTINEZ, OFFICER JOHNNY LONG, all in their Official and Individual Capacities, WILSON COUNTY, HARTFORD FIRE INSURANCE COMPANY, <br><br> Defendants. | **COMPLAINT** <br> **(Jury Trial Demanded)** |

Plaintiff, Jonathan Mayberry, as the Personal Representative of the Estate of Christopher Lee Mayberry, by and through counsel, complaining of the Defendants, jointly and severally, hereby alleges and says as follows:

**PARTIES**

1. Plaintiff, Jonathan Mayberry, is the Administrator of the Estate of his deceased brother, Christopher Lee Mayberry, and is a resident of Columbia, South Carolina. A copy of the Letters of Administration is attached hereto as Exhibit "A."

2. That Defendant, Sheriff Calvin Woodard, Jr. (hereinafter referred to as "Sheriff Woodard, Jr."), to Plaintiff's information and belief, is a citizen and resident of Wilson County, North Carolina, was at all material times acting under color of state law. He is the duly elected Sheriff of Wilson County, North Carolina with full legal authority and responsibility for operating the Wilson County Detention Center and is being named as a defendant herein both in an official and individual capacity.

3. Upon information and belief and at all relevant times, Defendant Sheriff Woodard was and is the elected Sheriff of Wilson County pursuant to Article VII, Section 2 of the North Carolina

1

Constitution and NC. Gen. Stat § 162-1. The Sheriff is sued in his individual and official capacity as the Sheriff of Wilson County. Sheriff Calvin Woodard, Jr.'s office address is 100 E. Green ,Street, Box 1666, Wilson, North Carolina 27894-1666.

4. Wilson County is a county located in and organized under the laws of, North Carolina. The County Manager is Denise Stingale, 2201 Miller Road South. Wilson, North Carolina 27893.

5. Defendant Hartford Fire Insurance Company is a corporation organized under the laws of the State of Connecticut and is the surety for the Wilson County Sheriff 's Department.

6. That Defendant, Captain Marc Connor, to Plaintiff's information and belief, is a citizen and resident of Wilson County, North Carolina, and was at all material times acting under color of state law. He is employed by Sheriff Woodard, Jr. at the Wilson County Detention Center and is being named as a defendant herein both in an official and individual capacity.

7. That Defendant, Officer Darius Ellis, to Plaintiff's information and belief, is a citizen and resident of Wilson County, North Carolina, and was at all material times acting under color of state law. He is employed by Sheriff Woodard, Jr. at the Wilson County Detention Center and is being named as a defendant herein both in an official and individual capacity.

8. That Defendant, Officer John Davidson Bissette, Jr., to Plaintiff's information and belief, is a citizen and resident of Wilson County, North Carolina, and was at all material times acting under color of state law. He is employed by Sheriff Woodard, Jr. at the Wilson County Detention Center, and is being named as a defendant herein both in an official and individual capacity.

9. That Defendant, Corporal Terry Terrell Blanchard, to Plaintiff's information and belief, is a citizen and resident of Wilson County, North Carolina, and was at all material times acting under color of state law. He is employed by Sheriff Woodard, Jr. at the Wilson County Detention Center, and is being named as a defendant herein both in an official and individual capacity.

10. That Defendant, Officer Jose A. Martinez, to Plaintiff's information and belief, is a citizen and resident of Wilson County, North Carolina, and was at all material times acting under color of state law. He is employed by Sheriff Woodard, Jr. at the Wilson County Detention Center, and is being named as a defendant herein both in an official and individual capacity.

11. That Defendant, Officer Johnny Long, to Plaintiff's information and belief, is a citizen and resident of Wilson County, North Carolina, and was at all material times acting under color of state law. He is employed by Sheriff Woodard, Jr. at the Wilson County Detention Center, and is being named as a defendant herein both in an official and individual capacity.

## GENERAL ALLEGATIONS

12. Plaintiff repeats re-alleges and re-asserts each and every allegation set forth in paragraphs above, as if fully set forth herein.

13. The Sheriff has waived any claim of sovereign immunity, for himself and his deputies, by purchasing a surety bond pursuant to N.C.G.S. 58-76-5 and/or by purchasing liability insurance pursuant to N.G.S. 153A-435 and/or by participation in a risk management pool as authorized by statute.

14. The Sheriff has the full legal authority and responsibility for operating the Wilson County Detention Center. The Detention Center operates under the authority of the Wilson County Sheriff.

15. The Sheriff, by and through his Deputies, is responsible for directing the operation of the Wilson County Detention Center including the supervision of the detention staff, overseeing inmate mental health care, and adhering to department policies and procedures to ensure the security, safety and well-being of employees and inmates.

16. In accordance with 10A N.C.A.C. 14J.0203, the operations of the Wilson County Detention Center are governed by the following industry standards:

    (1) Appalachian State University, Model Policies and Procedures Manual for North Carolina Jails;10A N.C.A.C. 14J.0203;

    (2) American Correctional Association, Standards for Adult Local Detention Facilities;

    (3) American Correctional Association, Standards for Small Jails; and

    (4) National Commission on Correctional Health Care, Standards for Health Services in Jails.

17. Under the United State Constitution and the North Carolina State Constitution, the Sheriff has a non-delegable duty to provide adequate mental health care to inmates detained at the Wilson County Detention Center operated by the Sheriff.

18. The Sheriff, Sheriff Deputies and Detention Center Mental health Staff knew, or should have known, that deliberate indifference to the serious mental health needs and supervision of an inmate constitutes the unnecessary and wanton infliction of pain prescribed by the Eighth and Fourteenth Amendments to the United States Constitution.

19. At all relevant times the Defendant Officers were in uniform and acting within the scope of his employment and under color of state law. Particularly, at all relevant times Defendant Officers acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the Wilson County, a municipal entity in the State of North Carolina.

## STATEMENT OF FACTS

19. Plaintiff repeats re-alleges and re-asserts each and every allegation set forth in preceding paragraphs, as if fully set forth herein.

20. On August 15, 2019, Christopher Mayberry was booked and incarcerated into the Wilson County Detention Center.

21. At the time of his incarceration, Mr. Mayberry had a lengthy history of mental illness.

22. Mr. Mayberry was also incarcerated previously, and jail staff was aware of his mental condition.

23. Upon admission, Mr. Mayberry advised screening staff that he had a history of mental health issues including depression and anxiety.

24. Mr. Mayberry further advised screening staff that he had prior mental health hospitalization and attempted suicide two years prior and that he recently considered suicide by placing a knife to his throat.

25. Mr. Mayberry was not initially placed on suicide watch or any additional wellness checks for his safety.

26. On September 10, 2019, Mr. Mayberry was placed on suicide watch after reporting to jail staff that he would injure himself. Further the jail staff was informed and aware that Mr. Mayberry threatened self-harm and suicide in a court appearance at the jail.

27. On September 11, 2019, Larry Huggins interviewed Mr. Mayberry via telemed and made the decision to remove him from suicide watch and return him to regular population with another inmate.

28. After this date, jail staff became aware that Mr. Mayberry wrote letters to his wife in which he discussed suicide and killing himself. Jails staff were aware or should have been aware of this correspondence and acted immediately to place Mr. Mayberry on suicide watch.

29. The jail staff and other employees of the Wilson County Detention Center knew that the statements by Mr. Mayberry indicated an emergent mental health emergency.

30. The jail staff and other employees of the Wilson County Detention Center knew that the failure to intervene in regard to Mr. Mayberry's behavior demonstrated a gross deviation from the acceptable standard of care and demonstrated a willful disregard for the health, welfare, and safety of Mr. Mayberry and that the likely result of their willful disregard and deliberate indifference would likely directly contribute to his injuries, suffering and death.

31. Upon information and belief, Officer Darius Ellis, Officer John David Bissette, Jr., Corporal Terry Terrell Blanchard, Officer Jose A. Martinez, and Officer Johnny Long were all officers

on duty who had the responsibility of making supervisory rounds to ensure the safety and welfare of Mr. Mayberry.

32. Upon information and belief, Officer Darius Ellis, Officer John David Bissette, Jr., Corporal Terry Terrell Blanchard, Officer Jose A. Martinez, and Officer Johnny Long failed to make their supervisory rounds to check on the welfare of Mr. Mayberry.

33. Upon information and belief, Captain Marc Connor was responsible for the day-to-day operation and supervision of the jail staff at the Wilson County Detention Center.

34. Upon information and belief, Sheriff Calvin Woodard, Jr. and Captain Marc Connor were aware that jail personnel were short staffed and were not making their mandatory supervisory rounds including Officer Darius Ellis, Officer John David Bissette, Jr., Corporal Terry Terrell Blanchard, Officer Jose A. Martinez, and Officer Johnny Long.

35. Upon information and belief, Sheriff Calvin Woodard, Jr. and Captain Marc Connor were aware that jail personnel were not properly trained and unfamiliar with the protocol for handling jail inmates that suffered from mental illness including Officer Darius Ellis, Officer John David Bissette, Jr., Corporal Terry Terrell Blanchard, Officer Jose A. Martinez, and Officer Johnny Long.

36. Upon information and belief, Sheriff Calvin Woodard, Jr., Captain Marc Connor and other jail staff including Officer Darius Ellis, Officer John David Bissette, Jr., Corporal Terry Terrell Blanchard, Officer Jose A. Martinez, and Officer Johnny Long, were familiar with Mr. Mayberry and his mental health issues and suicidal ideations.

37. Sheriff Calvin Woodard, Jr., Captain Marc Connor and other jail staff including Officer Darius Ellis, Officer John David Bissette, Jr., Corporal Terry Terrell Blanchard, Officer Jose A. Martinez, and Officer Johnny Long allowed Mr. Mayberry to be paced in the jail's general population without being properly observed and protected from harming himself.

38. On September 23, 2019, Mr. Mayberry was found hanging by a sheet from a light fixture in the bathroom of Old Jail 1B 1.

39. Defendants reported Mr. Mayberry's death to the State of North Carolina the same day.

40. On or about October 14, 2019, the North Carolina Division of Health Service Regulation (DHSR) – Construction Section conducted a death investigation. The investigation found that the Wilson County Detention Center was not in compliance with North Carolina State Law regarding the operation of jails, specifically finding several violations of 10A NCAC Subchapter 14J Jails, Local Confinement Facilities.

41. Among the deficiencies discovered during the investigation, the following were found:

    a. It was found that the Rules for Jail Operations 10A NCAC 14J .0601 (a) require that Officers shall make supervision rounds and directly observe each inmate in

5

person at least twice per hour on an irregular basis, and that the supervision rounds shall be documented, if remote electronic monitoring is used to supplement supervision, it shall not be substituted for supervision of rounds and direct visual observation.

b. This Rule was not met as evidenced by an on the record review and staff interview on the morning of October 14, 2019, which revealed that the supervision rounds were not being conducted as required by this Rule.

c. Specifically, it was found through a Staff interview of the Administrator that Decedent Christopher Mayberry was on a two times per hour direct observation watch and was being housed in cell block 1B in the Old Jail.

d. Records review indicated that For September 21, 2019 there was only one documented supervision round conducted during the 8:00 am, 10:00 am, 12:00 pm, and the 3:00 pm hours; and there were no documented supervision rounds conducted during the 9:00 am, 11:00 am, 1:00 pm, 5:00 pm, 7:00 pm, 8:00 pm, 9:00 pm, 10:00 pm, and 11:00 pm hours.

e. For September 22, 2019 there was only one documented supervision round conducted during the 7:00 am, 12:00 pm, 1:00 pm, and 3:00 pm hours. There were no documented supervision rounds conducted during the 12:00 am, 1:00 am, 2:00 am, 3:00 am, 4:00 am, 5:00 am, 6:00 am, 8:00 am, 10:00 am, 11:00 am, 2:00 pm, 4:00 pm, 5:00 pm, 6:00 pm, 7:00 pm, 8:00 pm, 9:00 pm, 10:00 pm, and 11:00 pm hours.

f. For September 23, 2019 there was only one documented supervision round conducted during the 7:00 am, 8:00 am, 11:00 am, 2:00 pm and the 3:00 pm hours. There were no documented supervision rounds conducted during the 12:00 am, 1:00 am, 2:00 am, 3:00 am, 4:00 am, 5:00 am, 6:00 am, 9:00 am, and 12:00 pm hours.

g. Rules for Jails 10A NCAC 14J .0601 (c) Supervision required Officers shall directly observe, at least four times per hour, inmates who display the following behavior: (1) physically hitting or trying to hit an officer; or (2) being verbally abusive; or (3) stating he will do harm to himself; or (4) intoxicated, as determined by a score of .15 on a breathalyzer or displaying slurred speech or smelling of alcohol or inability to control body movement; or (5) displaying erratic behavior such as screaming, crying, laughing uncontrollably, or refusing to talk at all. In addition to displayed behavior, a previous record of a suicide attempt or a previous record of mental illness shall warrant observation at least four times per hour.

h. This Rule is not met as evidenced by record review on the afternoon of October 14, 2019 and subsequent review since that date, the facility failed to place an inmate on a four times per hour direct observation watch at admission.

6

      i. The records review indicated a document identified as Wilson County Sheriff's Office Inmate Mental health Screening was completed on August 15, 2019 at 9:22 pm. A Detention officer asked the inmate a series of questions and Question #10 was related to prior mental health issues. The inmate informed the officer that he has mental health issues, depression, and anxiety. There was no record of the inmate being placed on a four times per hour direct observation watch at admission.

42. The Defendants, jointly and severally, exhibited deliberate indifference to the serious mental health needs of Christopher Mayberry by failing to provide adequate mental health observation, causing the unnecessary and wanton infliction of pain, and proximately causing his death on September 12, 2016, all in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

43. During the period of Mr. Mayberry's incarceration, the jail staff demonstrated a culture of disorganized and ineffective observation of mental health protocol.

44. During the period of Mr. Mayberry's incarceration, the Wilson County Detention Center demonstrated a culture of disorganization, intentional, reckless and knowing disregard for the needs of Mr. Mayberry and a failure to act in the face of clear and direct mental health crisis. There was a widespread custom and practice amounting to a policy of the detention center of regularly skipping and failing to make rounds.

45. All named Defendants including Defendant, Sheriff Woodard, Jr. who has a non-delegable duty to provide inmates, including Christopher Mayberry, with adequate mental health care and protections against injury jointly and severally, failed in their duties towards Christopher Mayberry, thereby proximately causing his death on September 23, 2019.

46. As a result of the Plaintiff's decedent's death, the Plaintiff is entitled to recover all damages allowed by North Carolina law for violation of his constitutional rights pursuant to 42 U.S.C. § 1983 including reasonable compensation for attorney's fees pursuant to 42 U.S.C. § 1983.

47. The Plaintiff is also seeking damages against Defendants because the conduct set forth above constitutes deliberate indifference, willful, wanton, intentional, negligent and grossly negligent conduct towards Christopher Lee Mayberry which proximately caused his death.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANT
## CALVIN WOODARD, JR. AND CAPTAIN MARC CONNOR
## (§ 1983: SUPERVISOR LIABILITY FOR FAILURE TO TRAIN AND SUPERVISE)

48. Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

49. Defendant, Sheriff Calvin Woodard, Jr. and Captain Marc Connor were acting in a governmental capacity and under color of state law at the time of Mr. Mayberry's death. They had the authority and obligation but failed to properly train and supervise their employees and

7

subordinates to recognize and appropriately respond to mental health emergencies and abide by proper constitutional standards of supervision towards detainees in their care.

50. Prior to Mr. Mayberry's death on September 23, 2019, other inmates at the Wilson County Detention Center suffered and died due to the Defendants denial of adequate mental health care treatment and supervision, such that Defendants, jointly and severally, have engaged in pattern and practice so as to create a custom, policy and practice of failing to provide adequate mental health care and supervision to inmates in their custody, care and control.

51. The Defendants knew or should have known that its employees were failing to adequately identify and respond appropriately if they failed to make their required supervision rounds of to inmates serious and life-threatening mental impairment, thereby violating inmates Federal and State Constitutional Rights.

52. The Defendants were deliberately indifferent to the obvious serious mental health needs of patients and jail detainees, knowing that potentially fatal consequences could be suffered by such individuals, including Mr. Mayberry, as a result of Defendants' failure to properly train and supervise their employees. The Defendants could and should have taken reasonable steps to ensure that their employees were reasonably and adequately supervised, trained, and disciplined to respond to mental health emergencies and conduct timely supervision rounds for direct observation but failed to so.

53. The Defendants' policies, customs, and practices in failing to adequately supervise and train their employees were the proximate and legal causes of violations of Mr. Mayberry's Federal and State Constitutional Rights.

54. Defendants were at all times relevant to this claim acting pursuant to municipal custom, policy, protocol, ordinance, regulation, wide-spread habit, usage, or practice in their actions pertaining to Mr. Mayberry. Defendants' actions in this regard are evidenced by a pattern of bad faith and deliberate indifference to mental health needs and constitutional rights of inmates among multiple jail staff as directed towards Mr. Mayberry.

55. The acts or omissions of Defendants, Sheriff Calvin Woodard, Jr. and Connor, caused Mr. Mayberry severe mental and physical harm in the days before his death, and proximately caused his death.

56. As a direct and proximate result of the aforesaid constitutional violations, civil rights violations and misconduct of Defendants, jointly and severally, Plaintiff has sustained damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), including for pain and suffering prior to his death, lost earnings, mental health expenses, and wrongful death damages.

## SECOND CLAIM FOR RELIEF AGAINST
## DEFENDANT CALVIN WOODARD, JR.
## (§ 1983 FAILURE TO PROVIDE ADEQUATE STAFFING AND RESOURCES)

57. Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

58. Defendant, through his agents and employees was deliberately indifferent to, ignored and disregarded the serious health care needs of Christopher Lee Mayberry while he was incarcerated at the Wilson County Detention Center, which led to or caused the death of Christopher Lee Mayberry. Furthermore, the Defendant, through his agents and employees failed to remedy the understaffing problems and shortages that have been persistent and ongoing at the Wilson County Detention Center.

59. Specifically, Defendant, through his agents and employees, failed to have adequate staffing to comply with State Statutes and Regulations regarding inmate observations, such that Officers who were supposed to perform inmate observations were required to perform intake and booking duties, as well as inmate transportation. In addition, the Defendant's jail monitoring system, including management software, was inadequate and deficient with respect to recording inmate observations. This persistent understaffing and lack of adequate resources directly led to the denial of mental health care to Christopher Mayberry and ultimately to his death.

60. As a direct and proximate and foreseeable result of the violations of the Eighth and Fourteenth Amendment to the United States Constitution and the misconduct of Defendant, as set forth above, Mr. Mayberry suffered injuries which caused his death and a violation of his Federal and State Civil Rights.

61. As a direct and proximate result of the aforesaid constitutional violations, civil rights violations and misconduct of Defendants, jointly and severally, Plaintiff has sustained damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), including for pain and suffering prior to his death, lost earnings, mental health expenses, and wrongful death damages.

## THIRD CLAIM FOR RELIEF AGAINST WILSON COUNTY:
## § 1983 MUNICIPAL LIABILITY

62. Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in Preceding paragraphs, as if fully set forth herein.

63. Based on information and belief, Wilson County and its chief policy makers, believed to be Sheriff Woodward and\or Marc Conner acted with deliberate indifference, gross negligence, and reckless disregard to the safety, security, and constitutional and statutory rights of Mr. Mayberry, the public and the Plaintiffs, as well as others similarly situated, maintained,

9

enforced, tolerated, permitted, acquiesced in, and applied the following policies, practices, or customs and usages:

  a. Failure to implement protocols and train officers in the proper ways to assess, maintain and house persons with mental illness to protect them from harm because of their mental illness;

  b. Failure to adequately train, supervise and control employees in the implementation and procedure of supervisory rounds to check on jail inmates;

  c. Failure to adequately train, supervise and control employees on the usage of suicide watch; and

  d. Failure to implement protocols and train officers on policy that would protect jail inmates who suffered from mental illness and were a threat to themselves.
  e. Allowed a custom and practice to exist whereby inmates needing enhanced supervision based on their vulnerable status were not subject to any supervision for extended periods of time.

64. As a direct and proximate and foreseeable result of the custom and practice of failure to supervise and ignoring serious medical needs Mr. Mayberry, the Defendant Wilson County, violated Mr. Mayberry constitutional rights under fourth and fourteenth amendments and proximately caused his death.

65. As a direct and proximate result of the aforesaid constitutional violations, civil rights violations, and misconduct of Defendants, jointly and severally, Plaintiff has sustained damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), including for pain and suffering prior to his death, lost earnings, mental health expenses, and wrongful death damages.

## FOURTH CLAIM FOR RELIEF AGAINST THE
## INDIVIDUAL CORRECTIONAL OFFICER 1983

66. Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in Preceding paragraphs, as if fully set forth herein.

67. The Defendants Ellis, Bissette, Blanchard, Martinez and Long were at all relevant times acting under color of state law. The had a constitutional duty to provide adequate supervision to detainees who suffered from mental illness and were threatening self-harm. Although they were aware that Mr. Mayberry was threatening self-harm they failed to take any action and were deliberately indifferent to a known serious medical need. They further failed to directly supervise Mr. Mayberry by failing to make the required rounds four times an hour.

68. As a direct and proximate result of their failure to reasonably respond to threats of suicide and failure to supervise Mr. Mayberry he committed suicide. The acts and omissions of the

10

individual defendants violated Mr. Mayberry's rights under the Fourth and Fourteenth Amendment and proximately caused his death.

### FIFTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### WRONGFUL DEATH ACTION PURSUANT TO N.C.G.S. § 28-174

69. Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in Preceding paragraphs, as if fully set forth herein.

70. This is an action for damages against Defendants for wrongful death of the Plaintiff's decedent, Christopher Lee Mayberry.

71. As a direct and proximate result of Defendants' negligence, gross negligence, willful and wanton conduct, and deliberate and reckless indifference for the safety and mental impairment of Christopher Mayberry, he suffered pain and mental suffering and eventually died from a lack of adequate mental health care.

72. As a result of Christopher Mayberry's death, the Plaintiff is entitled to recover all damages allowed under the North Carolina Wrongful Death Statute including the following damages, to wit:

    a. Expenses for care, treatment and hospitalization incident to the injury resulting in death;

    b. Compensation for pain and suffering of the decedent;

    c. The reasonable funeral expense of the decedent;

    d. The monetary value of the decedent to the persons entitled to receive the damages recovered, including but not limited to compensation for the loss of the reasonably expected:

    e. Net income of the decedent,

    f. Services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered;

    g. Society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered;

    h. Nominal damages when the jury finds.

73. As a direct and proximate result of the aforesaid constitutional violations, civil rights violations and misconduct of Defendants, jointly and severally, Plaintiff has sustained damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), including

11

for pain and suffering prior to his death, lost earnings, mental health expenses, and wrongful death damages.

**SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS CAPTAIN MARC CONNOR, OFFICER DARIUS ELLIS, OFFICER JOHN DAVID BISSETTE, JR., CORPORAL TERRY TERRELL BLANCHARD, OFFICER JOSE A. MARTINEZ, OFFICER JOHNNY LONG- NEGLIGENT AND WANTON CONDUCT**

74. Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

75. At all times complained of Defendants Connor, Ellis, Bissette, Blanchard, Martinez and Long owed Mr. Mayberry a legal duty to exercise appropriate care and diligence toward him in their role as correction officers.

76. At all times complained of Defendants Connor, Ellis, Bissette, Blanchard, Martinez and Long owed Mr. Mayberry a legal duty to follow the rules. regulations, statutes, procedures and protocols that apply to correction officers in their role as correction-officer.

77. Defendants Connor, Ellis, Bissette, Blanchard, Martinez and Long breached the legal duty they owed Mr. Mayberry and knowingly and willfully failed and refused to follow the rules, regulations, statutes, procedures and protocols that Defendants Connor, Ellis, Bissette, Blanchard, Martinez and Long owed to Mr. Mayberry in their role as correction officers.

78. Following the death of Mr. Mayberry, an investigation was conducted to determine the cause of Mr. Mayberry' death.

79. Defendants Connor, Ellis, Bissette, Blanchard, Martinez and Long were found by the official investigation to have breached the legal duty they owed to Mr. Mayberry in their role as correction officers. including but not limited-to intentionality, grossly negligently and negligently breaching 10A NCAC 14.1 .0601.

80. Defendants Connor, Ellis, Bissette, Blanchard, Martinez and Long acted negligently, wantonly, recklessly, and in willful disregard of the Mr. Mayberry' legal rights in that they:

    a. Negligently. wantonly, recklessly, and in willful disregard of Mr. Mayberry' legal rights failed to comply with and follow the rules, regulations, statutes, procedures and protocols that Defendants Connor, Ellis, Bissette, Blanchard, Martinez and Long knew were required of them in their roles as correction. officers and in their treatment of Mr. Mayberry.

    b. Negligently, wantonly, recklessly, and in willful disregard of Mr. Mayberry' legal rights treated Mr. Mayberry in a manner that violated and was below the applicable standard of care in similar facilities in the same or similar communities.

c. Negligently, wantonly, recklessly, and in willful disregard of. Mr. Mayberry' legal rights treated Mr. Mayberry. in a manner that the application of their knowledge and skill failed to exercise reasonable care, due diligence, and reasonable and prudent caution in the care and supervision of an ill inmate; and these failures were a proximate cause of the injuries and death of Mr. Mayberry.

d. Negligently, wantonly, recklessly, and in willful disregard of Mr. Mayberry's legal rights failed to comply with and enforce applicable national, state, and local mental health directives, policies, and procedures that are relevant to a given set of clinical circumstances.

e. Negligently, wantonly. recklessly, and in willful disregard of Mr. Mayberry's legal rights failed to comply with their legal duty of supervision of all of the officers in the Wilson County Detention Center.

f. Negligently, wantonly, recklessly, and in willful disregard of Mr. Mayberry's legal rights failed to comply with their legal duty of appropriate and reasonable care. custody, and safekeeping of inmates and detainees at the Wilson County Detention Center, including Mr. Mayberry.

g. Negligently. wantonly. recklessly, and in willful disregard of Mr. Mayberry's legal rights failed to comply with their legal duty of appropriate and reasonable care, custody, and safekeeping of inmates and detainees at the Wilson County Detention Center, including Mr. Mayberry as keepers of the Wilson County Detention Center pursuant to NC. Gen. Stat.§ 18265.

h. Negligently, wantonly, recklessly, and in willful disregard of Mr. Mayberry's legal rights failed to comply with their legal duty of appropriate and reasonable care, custody, and safekeeping at inmates and detainees at the Wilson County Detention Center. including Mr. Mayberry, as agents and employees of the Sheriff. or in the alternative, Wilson County.

i. Were negligent, grossly negligent reckless. and willful and wanton in such other and further manners as will be determined through discovery and proven at trial.

81. As a direct and proximate result of the acts. Omissions or series of acts and omissions of Defendants, including Defendants Connor, Ellis, Bissette, Blanchard, Martinez and Long, and Mr. Mayberry's consequent wrongful death, Mr. Mayberry's heirs at law have been deprived of the benefit of him in their respective lives. Mr. Mayberry's heirs at law are entitled to recover from Defendants all damages caused by Defendant's negligence, including all such damages as allowed by NC. Gen. Stat. § 28A-18-2.

82. As a direct and proximate result of the aforesaid negligence, gross negligence, willful and/or wanton behavior and misconduct of Defendants, jointly and severally, Plaintiff has sustained damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00),

including for pain and suffering prior to his death, lost earnings, mental health expenses, and wrongful death damages.

### SEVENTH CLAIM FOR RELIEF AGAINST SHERIFF CALVIN WOODARD JR. IN HIS INDIVIDUAL AND IN HIS OFFICIAL CAPACITY AND ACTION ON BOND AGAINST HARFORD FIRE INSURANCE COMPANY PURSUANT TO N.C. GEN. STAT § 58076-1. ET. SEQ.

83. Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

84. At all relevant times, Sheriff Calvin Woodard. Jr. (hereinafter referred to as "the Sheriff") was and is:
    a. In control of the Wilson County Detention Center;
    b. In the final decision making authority over law enforcement policies and personnel in his office;
    c. Directly responsible for the appointment, retention, supervision, and conduct of his officers, deputies, employees, and agents;
    d. Responsible for the care and custody of the Wilson County Detention Center;
    e. Responsible for the care and custody of inmates and detainees in the Wilson County Detention Center;
    f. The keeper of the Wilson County Detention Center pursuant to N.C. Gen. Stat. § 162-55 and he appointed other keepers of the Wilson County Detention Center; and
    g. Vicariously liable for the actions of his agents, employees, officers, deputies, supervisors, managers, jailors, and anyone else who worked in the Wilson County Detention Center.

85. Hartford Fire Insurance Company is a corporation organized under the laws of the State of Connecticut and is the surety for the Wilson County Sheriff's Department.

86. Upon information and belief Hartford Fire insurance Company (the Surety") provides a Sheriff's bond for the induction of Sheriff Woodard into the Office of Sheriff of Wilson County as required by NC. Gen. Stat § 16-5 and 58-72-1, et seq. and an additional bond or bonds which covered and covers Sheriff Woodard.

87. Upon information and belief and at alt relevant times, to the extent that any or all Defendants in the action claim they are a municipality, government, or county owned. operated, or funded entity, or an employee or agent of such an entity all such Defendants

waived any potential governmental immunity or sovereign immunity defense for any-of the acts or omissions alleged in this Complaint.

88. In the alternative, upon information and belief and at all relevant times, Defendants and all agents, employees, officers, nurses, jailers, deputies, or other health care providers who worked at the Wilson County Detention Center, waived any potential governmental immunity or sovereign immunity defense to the extent that they had or were covered by any bonds or insurance policies, or participated in or were covered by any local governmental risk pool pursuant to N.C. Gen. Stat.§§ 153A-435 and 58-23 that might cover any acts. or omissions alleged in this Complaint.

89. Upon information and belief. and at all relevant times, the Hartford Fire Insurance Company provided a bond or bonds pursuant to NC. Gen. Stat.§ 162—8 and additional bonds covering the Sheriff. and the Hartford Fire insurance Company is named as 3 Defendant to this action, as required by N.C. Gen. Stat. § 58-724, *et seq*.

90. Upon information and belief and at all relevant times, Defendants and any and all agents, employees, officers, nurses. jailers, deputies, or other health care providers who worked at the Wilson County Detention Center waived any potential governmental immunity or sovereign immunity defense that could have been raised to the Complaint by virtue of the Hartford Fire insurance Company's bonds and insurance policies to the extent of such bonds or policies.

91. At all relevant times, Sheriff Woodard was responsible for the formation and execution of policies regarding the custody, care and safekeeping of inmates and detainees at the Wilson County Detention Center.

92. Upon information and belief and at all relevant times, Sheriff Woodard had a legal duty to ensure that Mr. Caveness received appropriate care for Mr. Mayberry's heath, but despite that legal duty. Sheriff Woodard acting under color of state law, had in effect de facto policies, practices and customs that were a direct and proximate cause of the Wrongful, unconstitutional, and unlawful conduct of the officers or mental health care providers who worked at the Wilson County Detention Center, as alleged above.

WHEREFORE, Plaintiff, Jonathan Mayberry, as Administrator of the Estate of Christopher Lee Mayberry, prays the Court enter a judgement and award against Defendants, jointly and severally, as follows:

1. That Plaintiff have and recover of the Defendants, jointly and severally, compensatory damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00) for damages, together with interest at the legal rate;

2. That all issues of fact be tried by a jury;

15

3. That the costs of this action, including reasonable attorney's fees, be taxed against the Defendants, jointly and severally; and

4. For such other and further relief as to the Court may seem just and proper.

This the 23rd day of September, 2021.

<div style="margin-left: 3em;">

/s/ Karonnie R. Truzy
NC State Bar No. 28228
**CRUMLEY ROBERTS, LLP**
2400 Freeman Mill Road, Suite 200
Greensboro, North Carolina 27406
Telephone (336) 333-9899
Email:  Krtruzy@crumleyroberts.com
*Attorneys for the Plaintiff*

</div>